Walter C. DUMAS

v.

Dave C. TREEN, Governor of the
State of Louisiana.

Civ. A. No. 80–596–A.

United States District Court,
M.D. Louisiana.

Nov. 19, 1982.

Norman L. Haymer, Jr., T. Kenneth El-
bert, Baton Rouge, La., for plaintiff.

Carmack M. Blackmon, Baton Rouge, La.,
for defendant.

## MEMORANDUM OPINION

JOHN V. PARKER, Chief Judge.

This action is now before the court for final disposition upon the merits. On February 18, 1981, 551 F.Supp. 1156 the court denied plaintiff's motion for preliminary injunction and the parties have now stipulated that the merits of the matter is submitted upon the testimony and evidence received at the hearing on the motion for preliminary injunction.

At issue are plaintiff's claims that the defendant, Governor Treen, violated his First and Fourteenth Amendment rights by failing to reappoint him or to submit his name to the State Senate as a member of the Board of Supervisors of Southern University and Agricultural and Mechanical College. The Southern University Board was created by Louisiana's 1974 Constitution and plaintiff was appointed by former Governor Edwards in 1975 for a term expiring December 31, 1978. His appointment was confirmed (consented to) by the state Senate. On January 28, 1980, then Governor Edwards reappointed plaintiff to the Board. On March 10, 1980, the defendant David Treen became Governor. Governor Treen did not submit plaintiff's name to the state Senate and following adjournment of the Legislature, Governor Treen, on September 17, 1980, appointed another person to the Southern Board, vice plaintiff.

Plaintiff's claims are based upon the constitutional principles articulated in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and their progeny. In the opinion dated February 18, 1981, the court discusses the application of those concepts to plaintiff's case. The court also found as a fact that plaintiff failed to prove that political discrimination against him was a cause motivating Governor Treen's decision. The evidence shows, that although plaintiff was actively involved in the campaign of Governor Treen's opponent, Louis Lambert, nei-

ther the Governor nor his immediate aides who advised him relative to appointments to the Southern University Board, were aware of plaintiff's political activities. They knew only that plaintiff held an interim appointment from Governor Edwards which would expire, unless the state Senate confirmed (consented to) his appointment prior to the end of the regular legislative session. Although plaintiff's name was not submitted to the state Senate, his political activities played no part in that decision.

In denying the motion for preliminary injunction, this court assumed that plaintiff might have been passed over for reappointment in order to make room for Treen supporters, *Tanner v. McCall,* 625 F.2d 1183 (5th Cir.1980), or because he was not sponsored by a member of the new administration. *Elrod,* supra. Making that assumption, this court concluded that appointment to a constitutionally created Board requiring Senate confirmation (consent) is not the type of "public employment" to which *Elrod* and *Branti* apply and thus, that plaintiff was unlikely to prevail upon the merits. Hence, the preliminary injunction was refused.

Reviewing the evidence previously offered, the court adopts all findings of fact and conclusions of law contained in the opinion dated February 18, 1981. The court also concludes that plaintiff proved neither that the Treen administration was attempting to make room for its own supporters nor that sponsorship by a friend of the administration was a prerequisite to his reappointment to the Board of Southern University. All persons holding interim appointments from the Edwards' administration who requested reappointment were considered by the Treen administration and there is no evidence that prior political support or even future "political loyalty" was imposed as a condition of reappointment. Plaintiff did not request reappointment; consequently, he was not considered.

Interim appointments are just that—they have limited longevity and, in this court's view, there is no First Amendment violation in requiring, as the Treen administration did, that a recommendation of reappointment be made by a member of the Legislature or a friend of the administration, or that the individual himself request reappointment (assuming that these First Amendment principles have applicability to such public service).

■ Further reflection and examination of cases decided since denial of the motion for preliminary injunction, *Tanner v. McCall,* supra, *McCormick v. Edwards,* 646 F.2d 173 (5th Cir.1981), *cert. denied,* 454 U.S. 1017, 102 S.Ct. 552, 70 L.Ed.2d 415 (1981) and *Sweeney v. Bond,* 669 F.2d 542 (8th Cir.1982), *cert. denied, sub. nom. Schenberg v. Bond,* —— U.S. ——, 103 S.Ct. 174, 74 L.Ed.2d 143 have not modified this court's view that, in any event, the *Elrod-Branti* rationale does not reach public service such as here involved. A gubernatorial appointment to a prestigious, non-salaried position on the board of supervisors of a state university, requiring Senate consent under the Constitution is not "public employment" and the appointee is not a "public employee." The fact standing alone that Senate confirmation is required indicates the political nature of the position. Louisiana, by its Constitution has chosen to make such service political. No provision of the federal Constitution prohibits the people of Louisiana from taking that action.

*Branti v. Finkel,* supra, teaches that our inquiry is directed, not at whether a particular position is "policy making" or "confidential" but whether "party affiliation" is an appropriate requirement for the effective performance of the public office involved. *Id.* 100 S.Ct. at 1295.

The office held by plaintiff is created by the state Constitution. The responsibilities of the members of the Southern University Board are, subject to powers vested in the Board of Regents, to "supervise and manage the institutions, statewide agricultural programs, and other programs, administered through its system." Art. 8, Sec. 7(A) La. Const. 1974. The Board, "as a body corporate shall have authority to exercise all power to direct, control, supervise, and manage the institutions..." La.R.S.

17:3351(A). Members of the Board serve without pay except per diem and expenses for attending Board meetings. Art. 8, Sec. 7(C) La. Const. 1974; La.R.S. 17:3206.

■ The broad public responsibilities imposed upon members of Southern's Board by state law are apparent and, in this court's opinion, a governor of this state may appropriately require compatibility of political views as a prerequisite to appointment to such a position.

Plaintiff has raised one interesting new argument not previously presented. Plaintiff's ingenuous argument is that, under the Louisiana Constitution of 1974, plaintiff's 1980 appointment by former Governor Edwards was not interim at all and that, despite the absence of Senate confirmation, he continues in office.

Article 4 of the Louisiana Constitution deals with the executive branch and Section 5 thereof specifically deals with the powers and duties of the governor. Subsection H(1) of Section 5 grants to the governor the power to appoint, "subject to confirmation by the Senate, the head of each department in the executive branch..."

Subsection H(3) provides:

"If the legislature is not in regular session, the governor may make interim appointments, which shall expire at the end of the next regular session, unless submitted to and confirmed by the Senate during that session."

As previously noted, petitioner was appointed by former Governor Edwards at a time when the Senate was not in regular session, and his name was not submitted to and confirmed by the Senate at the next regular session. Accordingly, Governor Treen concluded that his appointment expired at the end of the 1980 regular session. This court accepted that postulate in its opinion of February 18, 1981.

Plaintiff now points out that appointments to the Southern University Board are covered, not by Article 4 of the state Constitution, quoted above, but by Article 8. Section 7(B) of Article 8 provides that the members of the Board shall be, "appointed by the governor, *with consent of the Senate.*" (Emphasis supplied)

Plaintiff correctly asserts that there is no provision in Article 8 corresponding to Section 5(H)(3), quoted above, which provides for expiration of interim appointments to the Board that are not "consented to" at the next regular session. Plaintiff then argues that the phrase "confirmation by the Senate," used in Article 4, Section 5, relative to the executive branch, does not have the same meaning as the phrase, "with consent of the Senate," used in Article 8, Section 7, relative to the Board of Supervisors. Plaintiff then argues that since his appointment was under Article 8, the Senate may yet "consent" to that appointment, rather than "confirm." He argues that adjournment of the next regular session of the Legislature after his appointment is of no moment, because of the absence of a provision for expiration of appointments under Article 8.

This court is aware of no Louisiana jurisprudence construing these provisions of the Louisiana Constitution and has been cited to none. As intriguing as these issues are, they present matters which are peculiarly the concern of the state courts, involving as they do, first impression resolution of provisions of the state Constitution. Jurisdiction in this court is predicated upon claims of First and Fourteenth Amendment and 42 U.S.C. § 1983 violations, under 28 U.S.C. § 1331. No pendant state law claims were included in the complaint, nor asserted in support of the motion for preliminary injunction.

Acceptance of pendant state law claims by a federal court is largely addressed to the discretion of the court, predicated upon a healthy respect for the state-federal system. Here plaintiff's belated claims, although most interesting, are matters of first impression under the state Constitution and this court concludes that resolution is best left to the state courts. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Crawford v. Rodeway Express, Inc.,* 485 F.Supp. 914 (W.D.La.1980).

A further reason supporting refusal to entertain these state constitutional issues in federal court is that their resolution will have no impact on the outcome of plaintiff's federal claims. The court has found as a fact that plaintiff has not proved any political motive in Governor Treen's decision to decline to submit plaintiff's appointment to the state Senate for its consideration. Whether plaintiff's interpretation of the state Constitution, is correct, that is, that his appointment was not interim, makes no difference in deciding his First and Fourteenth Amendment claims. The fact of the matter is that Governor Treen appointed another person to the seat on Southern's Board held by plaintiff because he *thought* that the appointment was interim and that it expired upon conclusion of the regular session of the Legislature. That appointment was not made because of political animosity toward plaintiff or because of a political loyalty condition of "employment." *Elrod v. Burns,* supra and *Branti v. Finkel,* supra, hold that the First Amendment protects a "public employee" from discharge or reappointment only when the discharge is solely because of political considerations. *Elrod v. Burns,* 427 U.S. at 350, 96 S.Ct. at 2678; *Branti v. Finkel,* 445 U.S. at 517, 100 S.Ct. at 1294. A misinterpretation of the state Constitution, if there were such here, is simply not relevant to proving a discharge because of political activities or beliefs, and that is the burden which plaintiff has here.

For the foregoing reasons and for the reasons stated in the opinion dated February 18, 1981, plaintiff's suit will be DISMISSED.